UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VICTOR FRANCISCO, | ) | 1:09-cv-00001 OWW JMD (HC) |
|           Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATIONS |
|    v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| | ) | |
| J.D. HARTLEY, Warden, | ) | OBJECTIONS DUE WITHIN THIRTY (30) |
| | ) | DAYS |
|           Respondent. | ) | |

Petitioner Victor Francisco ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1992 conviction on one count of first degree murder and two counts of attempted murder. The trial court sentenced Petitioner to a term of twenty-six years to life in prison.

Petitioner is not challenging his conviction in this instant action. Rather, Petitioner challenges the denial of his parole by the California Board of Parole Hearings (the "Board"), which he appeared before on December 20, 2006. Petitioner contends that the Board violated his constitutional rights by denying him parole.

Petitioner filed a petition for writ of habeas corpus with the Los Angeles County Superior Court challenging the Board's decision. The court denied the petition on February 26, 2008.

Petitioner also filed a petition for writ of habeas corpus with the California Supreme Court, which was summarily denied on September 10, 2008.

1    Petitioner filed the instant petition for writ of habeas corpus on December 5, 2009.
2 Respondent filed an answer to the petition on September 1, 2009.

# FACTUAL BACKGROUND

## I.   The Commitment Offense[1]

On July 28, 1990, Petitioner was at a house party when rival gang members fired rounds into the party. Petitioner and another man got into his car to find members of that rival gang. Petitioner was a member of the Block Crips street gang.

Gregory Bailey, a man named Phil, and another unnamed man, all members of the Eighth Street Gang, were hanging out outside a liquor store. A Volvo driven by Petitioner drove up and the passenger of the car started shooting at Bailey's group. Six shots were fired at the group; Bailey and the unnamed man were unharmed but Phil was fatally shot.

## II.   Pre-Conviction Facts[2]

Petitioner had been a member of the Block Crips for about four years prior to the commitment offense.

Petitioner began drinking alcohol when he was thirteen years old and began smoking marijuana when he was fourteen years old.

Petitioner did not graduate from high school.

Petitioner has a prior conviction for possession of marijuana laced with cocaine when he was a minor, for which he received probation.

Petitioner has a son with whom he is still in contact.

Petitioner's father is an accountant and his mother is a customs broker.

## III.   Post-Conviction Facts[3]

Petitioner earned his GED in 1993 and was in the midst of participating in correspondence

---

[1] The facts of the commitment offense are derived from the transcript of the Board of Parole Hearings's December 20, 2006, hearing in consideration of Petitioner's parole. (Answer, Ex. 3, Tr. Board of Parole Hr'gs (hereinafter Tr.), 13-16, Dec. 20, 2006.)

[2] (Tr. 16-24.)

[3] (Tr. 38-43.)

1  courses to receive his paralegal certificate at the time of the hearing.

2      Petitioner did not complete any vocational training during his time in prison, even after the
3  Board suggested it to him at his previous parole hearing.

4      Petitioner worked in the shipping department at the Prison Industry Authority laboratory for a
5  year and a half.

6      Petitioner participated in a limited manner in self-help programs.  In 2006 he participated in a
7  Biblical self-confrontation course and a Crimanon Way to Happiness course.  Petitioner has not
8  participated in Alcoholics Anonymous or Narcotics Anonymous.

## IV.  Post-Commitment Plans[4]

10      Petitioner would like to work as a paralegal if he is released from prison.  However, he has no
11  offers of employment in this field.

12      Petitioner has no official offers of employment.  He assured the Board that he could work for
13  his father doing bookkeeping, although his father's letter of support did not include an offer of
14  employment.

15      Petitioner's sister, Melanie Francisco, wrote a letter of support on behalf of Petitioner
16  offering to provide him with a home, financial support, and resources to seek employment.

17      Petitioner's file also contains letters of support submitted by Janai Moses, the mother of
18  Petitioner's son, Denise Moses, Janai's mother, Juana Francisco, Petitioner's sister, Corinthian
19  White, Petitioner's old neighbor, and Petitioner's parents.

## V.  Psychological Evaluation[5]

21      Petitioner has been diagnosed with Anti-Social Personality Disorder.  He received a Global
22  Assessment of Functioning score of 80, which the Board commented was on the low end of the
23  scale. The evaluation rated Petitioner's financial vocational plans as "good," his level of support as
24  "excellent," his prior work history as "limited," and his institutional adjustment as "fair."

25      The psychological evaluation listed positive factors such as the level of support Petitioner

---

[4] (Tr. 24-30.)

[5] (Tr., Psychosocial Assessment, July 20, 2006.)

U.S. District Court
E. D. California

3

receives from his family and the lack of a prior adult record. The evaluation further noted that Petitioner "acknowledged he committed the offense. He fully acknowledged the wrongfulness of his actions . . . [he] appears to take full responsibility for the offense and does not appear to rationalize or minimize his role."

As high risk factors, the psychological evaluation noted Petitioner's juvenile record and the fact that Petitioner has a record of aggression or violence in prison. The report also found risk in the fact that Petitioner refuses to participate in drug or alcohol treatment programs when he has a history of drug and alcohol abuse. Furthermore, the offense was premeditated and the victim was not an immediate threat to Petitioner when Petitioner and his companion shot him.

The report found that "comparing [Petitioner] to an average citizen within the community, [his] potential for violence would be . . . slightly higher due to his non-participation in Narcotics Anonymous, Alcoholics Anonymous, vocations, and further self help courses."

The evaluation recommended that Petitioner participate in Alcoholics Anonymous or Narcotics Anonymous, anger management courses, and continue to focus on his job and vocational training.

**VI     The Board's Decision**[6]

The Board found Petitioner unsuitable for parole because he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." The Board stated that the primary reason for its determination was the commitment offense but it also relied on Petitioner's juvenile record, involvement in gang membership, history of unstable relationships with others, limited participation in vocational training and self help, accrual of eight 128s[7] and four 115s[8], and the psychiatric evaluation.

---

[6] (Tr. 68-69.)

[7] A CDC 128 documents incidents of minor misconduct. See Cal.Code Regs., tit. 15, § 3312(a)(2); In re Gray, 151 Cal.App.4th 379, 389 (2007).

[8] A CDC 115 documents misconduct believed to be a violation of law or otherwise not minor in nature. See Cal.Code Regs., tit. 15, § 3312(a)(3); In re Gray, 151 Cal.App.4th at 389.

U.S. District Court
E. D. California

4

# DISCUSSION

## I.     Jurisdiction

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution and Petitioner is currently incarcerated at Avenal State Prison, which is located in Kings County.  As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus.  See 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

## II.    ADEPA Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment.  Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA.  See Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), *overruled in part on other grounds*, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment.  See Sass v. California Board of Prison Terms,

461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, Hayward, 603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

      Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents

1  need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v.
2  Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can
3  no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit
4  precedent on a federal Constitutional issue . . . This does not mean that Ninth Circuit caselaw is
5  never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of
6  determining whether a particular state court decision is an 'unreasonable application' of Supreme
7  Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the
8  AEDPA requires that the Court give considerable deference to state court decisions. The state
9  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is
10 bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.
11 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. Bailey v. Rae, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the Los Angeles County Superior Court and the California Supreme Court reached the merits of Petitioner's claims. As the California Supreme Court summarily denied Petitioner's claims, the Court looks through that decision to the last reasoned decision; namely, that of the Los Angeles Superior Court. See Ylst v. Nunnemaker, 501 U.S. at 804.

### III.   Review of Petitioner's Claims

Petitioner claims that his due process rights were violated when the Board denied him parole based on a finding that Petitioner posed a current threat to public safety.

The Court analyzes a due process claim in two steps. '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether

the procedures attendant upon that deprivation were constitutionally sufficient.'" <u>Sass</u>, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. <u>Jago v. Van Curen</u>, 454 U.S. 14, 17-21 (1981).

Respondent argues that Petitioner does not have a federally protected liberty interest in parole. The Ninth Circuit Court of Appeals has recognized that "[i]f there is any right to be release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." <u>Hayward</u>, 603 F.3d at 555. The Ninth Circuit further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law creating an enforceable right to parole." <u>Id.</u> at 559. The <u>Hayward</u> court's finding that there exists no free standing federal due process right to parole, or the right to some evidence of current dangerousness, contained the consistent and continual caveat that state law may in fact give rise to federal protection for those rights. As later noted by the Ninth Circuit, "state created rights may give rise to liberty interests that may be enforced as a matter of federal law." <u>Pearson v. Muntz</u>, __ F.3d __, 2010 WL 2108964, *2 (9th Cir. 2010) (citing <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005)). The <u>Pearson</u> court found that, "<u>Hayward</u> necessarily held that compliance with state requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established. <u>Id.</u>

As noted by the Ninth Circuit in <u>Hayward</u>, the logical next question is whether California's parole scheme gives rise to a liberty interested enforced as a matter of federal law. The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." <u>Pearson</u>, __ F.3d __, 2010 WL 2108964, *4 (citing <u>Hayward</u>, 603 F.3d at 562); <u>see also</u> <u>Cooke v. Solis</u>, 2010 WL 2267018, *6-7 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state").

Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal due process is "whether the California

judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted).  As the Ninth Circuit recently observed in Cooke:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole,"[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

Cooke, 2010 WL 2267018, *7 (quoting In re Lawrence, 44 Cal.4th 1181, 1210, 1213 (2008)); see also Cal. Code Regs., tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole).  The California Supreme Court in Lawrence held that, "[t]he relevant determination for the Board and the Governor is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate."  Id. at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability").  Thus, the dispositive inquiry now before this Court is "'whether the identified facts are probative to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke, 2010 WL 22670108, *7 (quoting In re Lawrence, 44 Cal.4th at 1221) (emphasis in original).

Here, the Superior Court of California, Los Angeles County, was the last State court to have issued a reasoned opinion in Petitioner's case.  In that decision, the Superior Court found that there was some evidence "to support the Board's finding that the commitment offense was carried out in a dispassionate and calculated manner." (Answer, Ex. 2, Superior Ct. Decision.)  The State court went on to note that the Board also properly relied on Petitioner's juvenile record and the fact that Petitioner has received eight 128s and four 115s in prison, with the latest 115 occurring in 2003.

The Court finds that this decision is not an unreasonable application of the California "some evidence" standard.  As the Ninth Circuit noted, "courts in this circuit . . . need only decide whether the California judicial decision approving the governor's [or Board's] decision rejecting parole was

an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 562-63. While it appears the State court relied in large part on the commitment offense in upholding the Board's denial of parole, the State court also found further evidence of current dangerousness in other factors, most notably Petitioner's recent 115.

Petitioner received his most recent 115 on April 21, 2003, for failure to obey a direct order. This occurred after Petitioner was urged by the Board to remain discipline free at a documentation hearing on September 12, 2001. It was reasonable for the State court to find that Petitioner's failure to remain disciplinary free evidences current dangerousness because there is a reasonable likelihood that an inmate who cannot adhere to the rules and laws inside of prison will not be able to adhere to the laws outside of prison.

## CONCLUSION

The State court's finding that the Board's denial of parole was supported by "some evidence" was not an unreasonable application of the California "some evidence" standard. Thus, Petitioner cannot be granted habeas relief.

## RECOMMENDATION

Accordingly, in accordance with the above, IT IS HEREBY RECOMMEND that:

1. The petition for writ of habeas corpus be DENIED and
2. The Clerk of Court be directed to enter judgement for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to

1  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

2  IT IS SO ORDERED.

3  **Dated:    June 30, 2010**                       <u>      /s/ John M. Dixon      </u>
                                                UNITED STATES MAGISTRATE JUDGE